UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| WENDFORD T. HURST, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:15-CV-455-TAV-HBG |
| THE LILLY COMPANY, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This civil action is before the Court on defendant's Motion for Summary Judgment [Doc. 18] to which plaintiff responded [Doc. 21] and defendant replied [Doc. 22]. For the reasons discussed herein, the Court will grant defendant's motion [Doc. 18].

**I.  Background[1]**

This cases arises from defendant's decision to terminate sixty-one-year-old plaintiff's employment. Plaintiff began his employment as a forklift service technician ("forklift mechanic") on August 28, 1978 [Doc. 21-1 p. 16]. In his capacity as a forklift mechanic, plaintiff was required on a daily basis to lift sixty to seventy pound LP tanks and place them onto fork lifts [Doc. 19-1 pp. 15–16]. In addition, plaintiff was sometimes required to lean over and place twenty to thirty pound parts in engine spaces [*Id.* at 19–20].

---

[1] The Court notes that defendant submitted a statement of undisputed facts at the beginning of its Motion for Summary Judgment. In his response, plaintiff did not specifically respond to the statement of undisputed facts, but included his own statement of facts. To the extent that either party did not respond to an opposing party's factual assertion, and where the factual assertion is not contradicted by the other party's statement of facts, the Court considers that fact undisputed for purposes of this motion. *See* Fed. R. Civ. P. 56(e).

Plaintiff admits that his position involved a lot of "bending over" and "reaching for things," and he also states that he sometimes had to crawl underneath the forklifts [*Id.*].

Plaintiff began having issues with his back in 2011 [*Id.* at 38]. At that time plaintiff began experiencing back pain such that his back "hurt all the time" [*Id.*]. In early 2012 plaintiff saw a doctor and received shots into his back, which alleviated the pain for approximately one year [*Id.* at 41–42]. In 2013, plaintiff returned to the doctor and again received shots into his back [*Id.*]. This time, the shots only alleviated plaintiff's pain for approximately one month [*Id.*].

On June 24, 2014, plaintiff underwent a discectomy to remove a herniation in his L4-L5 disk [Doc. 19-34 p. 15]. On a medical form for plaintiff's disability benefits, plaintiff's Doctor, Dr. Patrick Bolt, indicated that it would be five to six months before plaintiff could expect significant improvement in his medical condition after the surgery [*Id.* at 13]. Dr. Bolt, provides however, that this timeline was just an estimate, and that the timeframe for recovery with respect to this type of surgery is "extremely variable" [*Id.* at 12–14]. Dr. Bolt did not believe at that time, however, that plaintiff would require any additional surgery [Doc. 21-1 p. 7]. On June 27, 2014, plaintiff submitted to defendant a request for Family Medical Leave Act (the "FMLA") leave, in which he requested leave from June 16, 2014, to September 30, 2014 [*See* Doc. 19-2]. Although plaintiff's position was not covered by the FMLA, and even though the requested leave was for a longer period of time than that required by the FMLA, defendant approved the leave request [*See id.*; Doc. 19 p. 3].

2

On July 11, 2014, and again on August 8, 2014, plaintiff returned to Dr. Bolt claiming that he was having increased pain [Doc. 19-34 p. 18]. Dr. Bolt ordered an MRI, and the results of the MRI necessitated that plaintiff undergo a second surgical procedure on August 26, 2014 [*Id.* at 20]. Dr. Bolt provides that the second surgery restarted the clock on plaintiff's estimated recovery time [*Id.* at 21]. Dr. Bolt states, however, that the time at which plaintiff would be able to return to work would ultimately depend on his symptoms [*Id.*].

On October 8, 2014, approximately one week after his leave had ended and not having returned to work, plaintiff returned to Dr. Bolt's office and met with Ashley Self, Dr. Bolt's nurse practitioner [Doc. 19-35 p. 13]. After the appointment, plaintiff called Dr. Bolt's office, indicating that he was in "terrible pain" and needed a note for his employer giving him additional time off of work in order to recover from the second surgery [*Id.*]. Nurse Self then provided plaintiff with such a note [*See* Doc. 19-12]. In the section of the note indicating at what point plaintiff could return to work, Nurse Self wrote the following: "Off work until [follow-up] apt on 11/19/14 & will be determined at that time" [*Id.*]. That day, plaintiff provided Nurse Self's note to his supervisor, Chris Oxendine [Doc. 21-1 p. 28]. The next day, October 9, 2014, defendant terminated plaintiff's employment [*See id.*].

On November 19, 2014, plaintiff had his follow-up appointment with Nurse Self [*See* Doc. 19-17]. At this appointment, Nurse Self stated that plaintiff was "ready to be released to work at full duty" [*Id.* at 1]. Nurse Self provides that a key factor in her determination that plaintiff was able to return to work full time was the extent to which

3

plaintiff could tolerate any remaining pain [Doc. 19-35 p. 16]. That day, plaintiff spoke to Oxendine, who advised plaintiff that he would not be allowed to return to work [*See* Doc. 21-1 p. 3].

The next day, on November 20, 2014, plaintiff called Dr. Bolt's office to speak with Nurse Self [Doc. 19-35 p. 19]. Later that day, plaintiff called CIGNA, defendant's long-term disability benefits provider, and CIGNA provides that plaintiff stated that his foot was numb and that he had back pain [*See* Doc. 19-19]. CIGNA further provides that plaintiff told it that his employer had terminated him and that Dr. Bolt was still keeping him off of work [*Id.*]. Plaintiff submits that what he actually told Dr. Bolt, Nurse Self, and CIGNA, is that his employer considered him unable to perform his job [Doc. 21-1 p. 4]. Nurse Self subsequently ordered another MRI on plaintiff, which was performed on November 26, 2014 [Doc. 19-35 p. 20]. Based on the results of the MRI, Nurse Self indicates that she would recommend that plaintiff alternate sitting and standing, and not lift over twenty pounds [*Id.* at 20–21]. Nurse Self provides that these limitations would continue until she had a chance to reevaluate plaintiff [*Id.*].

In December 2014, plaintiff spoke with Wally Painter, defendant's operations manager, about the possibility of getting his position back [Doc. 21-1 p. 22]. During that conversation, Painter told plaintiff, "with your age, you just need to go ahead and try to get your disability" [*Id.*].

4

Plaintiff subsequently initiated this suit, alleging disability and age discrimination under both federal and state law [*See* Doc. 1].  Defendant moves for summary judgment as to all of plaintiff's claims.

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of establishing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993).  All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations."  *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317).  The plaintiff must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "[M]ere conclusory and unsupported allegations, rooted in speculation, do not meet that burden."  *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003) (citation omitted).  Summary judgment may not be defeated "based on rumors, conclusory allegations, or subjective beliefs."  *Hein v. All Am. Plywood Co.*, 232 F.3d 482,

5

488 (6th Cir. 2000). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson*, 477 U.S. at 248. The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Hein*, 232 F.3d at 488.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Analysis

Plaintiff brings claims for disability discrimination under the Americans with Disabilities Act (the "ADA") and the Tennessee Disability Act (the "TDA"). He also brings claims for age discrimination under the Age Discrimination in Employment Act (the "ADEA") and the Tennessee Human Rights Act (the "THRA"). Defendant has moved for summary judgment with respect to all of these claims. The Court will first discuss the disability discriminations claims, and then turn to the age discrimination claims.

6

### A. Disability Discrimination Under the ADA

Plaintiff asserts that defendant is liable for disability discrimination under the ADA because: 1) it terminated his employment based on his disability and without providing him with a reasonable accommodation; and 2) because it failed to engage in the "interactive process" [*See* Doc. 1 p. 5]. The Court will first address the claims premised on defendant's termination of plaintiff without accommodating his disability, and then turn to defendant's alleged failure to engage in the interactive process.

#### 1. Termination and Failure to Reasonably Accommodate

The Court first looks to plaintiff's claim that defendant discriminated against him by terminating his employment because of his disability and without providing him a reasonable accommodation. Among other arguments, defendant asserts that summary judgment is warranted on these claims because plaintiff was not "otherwise qualified" to perform his position as a forklift mechanic at the time that he was fired.

The ADA prohibits discrimination against a "qualified individual" on the basis of disability with regard to, among other things, "the hiring, advancement, or discharge of employees." *See* 42 U.S.C. § 12112(b). Importantly, the statute defines "discriminate" as "including . . . not making reasonable accommodations to the known . . . limitations of an otherwise qualified individual with a disability . . . unless the employer shows that the accommodation would impose an undue hardship on the operation of its business." *Maat v. Cnty. Of Ottawa*, 657 F. App'x 404, 411 (6th Cir. 2016) (citing 42 U.S.C. § 12112(b) (internal quotation marks omitted)). Therefore, the Court notes that both defendant's

7

alleged firing of plaintiff because of his disability, as well as its alleged failure to provide him with a reasonable accommodation, could constitute proscribed discrimination under the ADA.

### i. Applicable Framework

The Court must first determine the legal framework applicable to these claims. As an initial point, the Court notes that a plaintiff may prove an ADA claim indirectly by means of the *McDonnell Douglas* burden-shifting framework. *Id.*; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Where a plaintiff argues that he or she has direct evidence of discrimination, however, which includes an employer's denial of a proposed reasonable accommodation, the Sixth Circuit has stated that "a plaintiff may defeat her employer's summary-judgment motion by producing evidence that she is disabled and 'otherwise qualified' for the relevant position." *See Maat*, 657 F. App'x at 411. Therefore, because these ADA claims are premised in part on plaintiff's assertion that defendant denied him a reasonable accommodation, and also because plaintiff has introduced other direct evidence of discrimination,[2] the Court will not apply the *McDonnell Douglas* test. Rather, in order to survive summary judgment as to his ADA claims premised on his termination and defendant's failure to provide a reasonable accommodation, plaintiff must

---

[2] This additional evidence includes defendant's fifth interrogatory, in which defendant submitted that its Chief Operations Officer made the decision to fire plaintiff based on information received from Wally Painter and Chris Oxendine following their conversations with plaintiff regarding "his physical condition and ability to perform the essential functions of his job and their observations of his physical condition" [Doc. 21-1 p. 83]. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016) ("When an employer acknowledges that it relied upon the plaintiff's handicap in making its employment decision . . . the *McDonnell Douglas* burden shifting approach is unnecessary . . . .").

8

produce evidence that, at the time of his termination, he was disabled, as well as otherwise qualified for his position as a forklift mechanic. *See id.*[3]

The Court notes that for purposes of defendant's summary judgment motion, the parties do not appear to dispute the fact that plaintiff's medical issues rendered him disabled within the meaning of the ADA at the time of his termination. Thus, the critical issue for the Court to consider is whether, viewing the evidence in the light most favorable to plaintiff, a reasonable fact finder could determine that plaintiff was otherwise qualified for his position at the time of his termination.

### ii. Whether Plaintiff Was "Otherwise Qualified"

The ADA defines "otherwise qualified individual" as "an individual who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *See id.* (citing 42 U.S.C. § 12111(8)). In the event that a plaintiff argues that he would have been otherwise qualified only with the benefit of a reasonable accommodation, the plaintiff has the burden of identifying the reasonable accommodation that would render him able to perform the essential functions of her position. *See Meade*, 657 F. App'x at 396 (noting that "the plaintiff bears the burden of establishing that he is otherwise qualified for the position despite his or her disability . . . with a proposed reasonable accommodation"). Therefore,

---

[3] The Court notes that even were it to apply the *McDonnell Douglas* framework, in order to survive summary judgment plaintiff would still be required to "establish that he was a qualified individual with a disability in that he could perform his position either with or without a reasonable accommodation." *See Aston v. Tapco Intern. Corp.*, No. 12-14467, 2014 WL 3385073, at *19 (E.D. Mich. Jul. 10, 2014).

9

in order to survive summary judgment plaintiff must show that he could have performed the essential functions of his position at the time of his termination, either with the benefit of a proposed reasonable accommodation, or without the benefit of a reasonable accommodation.

Plaintiff does not dispute defendant's evidence that his position as a forklift mechanic was physically strenuous, requiring him to lift sixty to seventy pound tanks, as well as twenty to thirty pound engine parts [Doc. 21-1 pp. 19–20]. Plaintiff also does not dispute that his position involved significant "bending over" and "reaching for things" [*Id.*]. Additionally, at the time of plaintiff's termination, he was in "terrible pain" as a result of his back problems, and required a note from Nurse Self granting him additional time off of work to recover from his second back surgery [*See e.g.*, Doc. 19-12]. Therefore, plaintiff does not appear to dispute that at the time of his termination he was physically unable to perform the essential functions of his position without the benefit of a reasonable accommodation.

Plaintiff argues, however, that he was still otherwise qualified under the ADA because at the time of his termination he could have performed the essential functions of his position with the benefit of a reasonable accommodation [Doc. 21 p. 9]. In order to meet his burden of proposing such a reasonable accommodation, plaintiff argues that the additional leave time that he requested constitutes a reasonable accommodation. Defendant argues that this requested leave is not a reasonable accommodation as a matter

10

of law because at the time Nurse Self wrote the note requesting additional leave for plaintiff it was uncertain when, if ever, plaintiff would be able to return to work.

As an initial point, the Court notes that in this circuit leave time may constitute a reasonable accommodation. *See Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 755, 783 (6th Cir. 1998). At the time that plaintiff requested the note from Nurse Self, however, plaintiff had already been out of work on leave since June 16, 2014, a period of over sixteen weeks. The Sixth Circuit recently stated in *Maat v. County of Ottawa* that in situations such as this where an employer has already provided an employee with a significant period of leave time, "an extension to that leave can be a reasonable accommodation only when its duration is definite." *See* 657 F. App'x at 412. In these situations, unless the requested additional leave time has a "certain or credibly proven end" at which point the employee can return to work, it is unreasonable as a matter of law. *See id.* at 413.

In the note Nurse Self provided plaintiff, and which plaintiff submits outlines his proposed reasonable accommodation, Nurse Self indicated that plaintiff needed additional leave time from work [Doc. 19-35 p. 13]. In the section of the note providing at what point plaintiff may be able to return to work, Self wrote: "Off work until [follow-up] apt on 11/19/14 & will be determined at that time" [*Id.*]. Therefore, while the note indicated that plaintiff needed to be off work until at least his follow-up appointment on November 19, 2014, the note did not state that plaintiff would necessarily be able to return to work at that time. Rather, it stated only that plaintiff's ability to return to work, and the time at which

he would be able to return to work, would be determined at the follow-up appointment on November 19, 2014. Therefore, the note did not provide a definite time as to when plaintiff's leave would end and he would be able to return to work. *See Maat*, 657 F. App'x at 412.

In his response brief, plaintiff does not directly address the argument that the leave requested in Self's note did not have a definite end. Plaintiff does, however, repeatedly characterize Nurse Self's note as requesting "additional leave until November 19, 2014" [*See* Doc. 21 p. 9; *see also id.* at p. 11 ("Here, Mr. Hurst only requested an additional six weeks . . . of recovery time.")]. Thus, plaintiff appears to argue that the requested leave was not indefinite because it was to extend only until November 19, 2014. Plaintiff further argues that the six-weeks of additional leave (from October 8, 2014, to November 19, 2014) was not unreasonable under the circumstances, including plaintiff's long career during which time he had very rarely taken leave time.[4]

Any argument that the requested leave would extend only to November 19, 2014, however, is undercut by a review of Nurse Self's note. As the Court has already stated, while the note took plaintiff off work at least until his follow up appointment on November 19, 2014, it did not indicate that plaintiff would be able to return to work on November 19, 2014. Rather, it stated that a further determination regarding if and when plaintiff could

---

[4] The Court notes that plaintiff also cites to the case *Cleveland v. Federal Express Corporation*, 83 F. App'x 74 (6th Cir. 2003), a case in which the Sixth Circuit found a total period of leave of approximately six months to be reasonable, to support his argument that the total leave requested in this case was not unreasonable under the circumstances. The *Maat* court, however, expressly addressed and distinguished *Cleveland* by noting that the *Cleveland* case involved a period of leave with a definite end. *See Maat*, 657 F. App'x at 413.

12

return to work would be made at that time. This finding is supported by Nurse Self's deposition, in which she indicated that had plaintiff's symptoms continued to inhibit his work abilities, she could have potentially decided at the November 19, 2014, appointment to continue to keep plaintiff off of work [Doc. 19-35 pp. 17–18].

Furthermore, that plaintiff had undergone an unexpected second surgery and reported being in terrible pain on October 8, 2014, further indicates that there could be no guarantee that he would be recovered and cleared for work on November 19, 2014. This is particularly true in light of Dr. Bolt's deposition testimony that the recovery time for back surgeries such as those undergone by plaintiff is "extremely variable" depending on the patient's symptoms, and also that plaintiff's recovery time reset after his second surgery [*See* Doc. 19-34 pp. 12–13; *see also* Doc. 21-1 p. 8 (deposition testimony of Dr. Bolt in which Dr. Bolt indicated that defendant's recovery timetable was just an estimate, and that a patient may take more than the estimated amount of time to recover)]. Thus, because plaintiff's proposed accommodation is leave without a "certain or credibly proven end," the Court finds as a matter of law that it is not a reasonable accommodation. *See Maat*, 657 F. App'x at 412; *see also Aston v. Tapco Int'l. Corp.*, 631 F. App'x 292, 297–98 (6th Cir. 2015) ("We have found that when an employee's return date is not so certain, an employer is not required to keep open a position for an employee indefinitely.").[5]

---

[5] The Court also notes that the uncertainty of plaintiff's recovery time appears to have been borne out by subsequent events. While Nurse Self released plaintiff to work at "full duty" at his follow-up appointment on November 19, 2014, Nurse Self subsequently ordered another MRI for plaintiff, and plaintiff underwent the MRI on November 26, 2014 [Doc. 19-35 p. 20]. Nurse Self provided in her deposition that based on the results of the MRI, she would recommend that plaintiff alternate sitting and standing, and not lift over twenty pounds [*Id.* at 20–21].

13

In sum, the additional leave that plaintiff requested does not constitute a reasonable accommodation as a matter of law. As this is the only accommodation plaintiff proposed, he has failed to identify a reasonable accommodation that would have permitted him to perform the essential functions of his position. Consequently, plaintiff was not a qualified individual under the ADA, and thus his claims based on his termination and defendant's alleged failure to provide reasonable accommodation fail as a matter of law. *See Maat*, 657 F. App'x at 413 ("Because [plaintiff's] requested leave was not definite in duration it could not have been a reasonable accommodation under the law of this circuit. For this reason, [plaintiff] has failed to show that she was able to perform her job tasks with such an accommodation, and there is no genuine dispute that she was not 'otherwise qualified' to perform her job.").

### 2. Failure to Engage in the Interactive Process

The Court next turns to plaintiff's claim that defendant violated the ADA by failing to engage in the interactive process. When an employee proposes a reasonable accommodation to an employer, "the employer has a duty to engage in 'interactive process' to identify the precise limitations resulting from the disability and potential reasonable

---

Considering that plaintiff's position regularly required him to lift sixty and seventy pound objects, the limitations outlined by Nurse Self based on the November 26, 2014, MRI would render plaintiff unable to perform the essential functions of his position. Additionally, the Court notes that while there is somewhat of a factual dispute between the parties as to what exactly plaintiff told Dr. Bolt, Nurse Self, and CIGNA on November 20, 2014, plaintiff offers no evidence to rebut Nurse Self's findings based on the November 26, 2014 MRI. Indeed, plaintiff does not even address this MRI, or Nurse Self's analysis of its results, in his response brief. *See* Fed. R. Civ. P. 56(e). Therefore, based on this evidence it appears to the Court that additional leave up to November 19, 2014, would not have permitted plaintiff to perform the essential functions of his position.

14

accommodations that could overcome those limitations." *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84 (6th Cir. 2012) (internal citation omitted). Although the Court has concluded that it will dismiss plaintiff's other ADA claims, it notes that a failure by the employer to engage in the interactive process can constitute an "independent violation of the ADA." *See Rorrer v. City of Stow*, 743 F.3d 1025, 1045 (6th Cir. 2014). However, "although mandatory, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Id.* at 1041.

In this case, plaintiff asserts that he triggered defendant's duty to engage in the interactive process by requesting the additional leave outlined in Nurse Self's note. Plaintiff reiterates his argument that this additional leave constituted a reasonable accommodation. As the Court has already found, however, that this requested leave did not constitute a reasonable accommodation, the Court finds that plaintiff never proposed a reasonable accommodation to defendant. Because defendant never proposed a reasonable accommodation, defendant's duty to engage in the interactive process was never triggered, and defendant may not be held liable for failing to engage in the interactive process. *See id; see also Peoples v. FCA US, LLC*, No. 15-14003, 2017 WL 2264786, at *12 (E.D. Mich. May 24, 2017).

In sum, because plaintiff did not propose a reasonable accommodation to defendant, defendant's duty to engage in the interactive process was never triggered. As such, the

Court will grant defendant's motion with respect to plaintiff's ADA claim based on defendant's failure to engage in the interactive process.

### B. Disability Discrimination Under the TDA

The Court next turns to plaintiff's claim of disability discrimination under the TDA. In his response to defendant's motion for summary judgment, plaintiff submits that he does not oppose summary judgment on this claim [*See* Doc. 21 p. 6 n.2].

The Court notes that unlike the ADA, the TDA does not require an employer to provide a disabled employee with a reasonable accommodation. *Jones v. Sharp Elec. Corp.*, No. W2013-01817-COA-R3-CV, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014). Furthermore, "if a person's disability to some degree prevents [the person] from performing the duties required by the employment sought or impairs the performance of the work involved, a defendant employer will not be considered to have discriminated against that person in an action under the TDA." *Id.* (internal citations omitted). In this case, it is undisputed that at the time that defendant terminated plaintiff's employment plaintiff could not perform all of the duties required by his position as a forklift mechanic because of his back problems. As the TDA does not prohibit defendant from firing plaintiff on this basis, and noting also the lack of opposition to summary judgment on this claim, the Court will grant defendant's motion for summary judgment as to the TDA claim.

### C. Age Discrimination

The Court next turns to plaintiff's claims that his termination constituted age discrimination in violation of the ADEA and the THRA. In support of this claim, plaintiff

16

points in particular to the statements by Painter that due to plaintiff's age he should "just . . . to go ahead and try to get [his] disability" [Doc. 21-1 p. 22].  As an initial point, the Court notes the same analysis applies to both ADEA and THRA claims.  *See Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 620 (6th Cir. 2006) ("We apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA.").

"The ADEA prohibits an employer from discharging an individual 'because of such individual's age.'"  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) (quoting 29 U.S.C. § 623(a)(1)).  As with disability discrimination, a plaintiff may prove a case of age discrimination using either direct evidence or indirect evidence.  *See Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547–48 (6th Cir. 2004).  The Court notes that in their briefing the parties proceed by means of indirect evidence, and as such, the Court applies the *McDonnell Douglas* burden shifting analysis. *See id.*

Under the *McDonnell Douglas* analysis, plaintiff bears the initial burden of establishing a prima facie case of age discrimination.  *See id.*  The burden then shifts to defendant, who must give a "legitimate, non-discriminatory reason for the adverse employment decision."  *Id.*  If defendant meets this burden, the burden then shifts again to plaintiff, "who must establish that the legitimate reasons offered by the defendant were just a pretext for decisions actually motivated by an unlawful bias against age."  *Id.*

Accordingly, the Court first looks to whether plaintiff can meet its burden of establishing a prima facie case of age discrimination.  In order to meet this burden, plaintiff must show: 1) that he was a member of a protected age class; 2) that his employment was

17

terminated; 3) that he was qualified for his position as a forklift mechanic; and 4) that he was replaced by a younger worker. *See id.*

Among other arguments, defendant asserts that the Court should grant its motion for summary judgment because plaintiff cannot establish that he was qualified for his position at the time of his termination [Doc. 19 p. 25]. Plaintiff counters by arguing that he was qualified for his position with a reasonable accommodation, specifically the additional leave time outlined by Nurse Self's note [Doc. 21 p. 23].

As an initial point, the Court notes that unlike the ADA, the ADEA does not define "qualified" for purposes of age discrimination as including individuals who can perform their job duties only with the benefit of a reasonable accommodation. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 979 F. Supp. 2d 252, 259 (D. Conn. 2013) ("[A]s reasonable accommodation is not implicated by plaintiff's . . . age discrimination claims, they also fail for lack of qualification.").[6]

In this case, it is undisputed that at the time of plaintiff's termination on October 9, 2014, he was unable to perform the job duties required of a forklift mechanic. In particular, he was unable to lift sixty to seventy pound tanks, and was in significant pain. Indeed, he requested and received a note from Nurse Self indicating that he was unable to work at that time. Therefore, the Court finds that plaintiff has failed to show that he was qualified for

---

[6] At any rate, the Court has already found that the additional leave plaintiff requested is not a reasonable accommodation as a matter of law.

18

Case 3:15-cv-00455-TAV-HBG Document 23 Filed 07/26/17 Page 18 of 19 PageID #: 911

his position as a forklift mechanic at the time of his termination, and thus plaintiff has failed to establish a prima facie case of age discrimination. *See Rowan*, 360 F.3d at 547–48.

As such, because plaintiff has failed to meet his burden of establishing a prima facie case of age discrimination, the Court will grant defendant's summary judgment with respect to plaintiff's age discrimination claims under the ADEA. Accordingly, as the Court will dismiss plaintiff's ADEA claim, it will also dismiss plaintiff's THRA claim. *See Bender*, 455 F.3d at 620.

In sum, the Court has found that it will dismiss all of plaintiff's claims, and will grant defendant's motion for summary judgment.

## IV. Conclusion

For the reasons discussed herein, the Court will **GRANT** defendant's Motion for Summary Judgment [Doc. 18]. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE