UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

WENFORD T. HURST,                )
                                 )
                Plaintiff,       )
                                 )
v.                               )        No.:   3:15-CV-455-TAV-HBG
                                 )
THE LILLY COMPANY,               )
                                 )
                Defendant.       )

## <u>MEMORANDUM OPINION AND ORDER</u>

This civil action is before the Court on plaintiff Wenford T. Hurst's Motion to Reconsider [Doc. 28]. In this motion and the accompanying memorandum in support [Doc. 29], plaintiff moves the Court to reconsider its July 26, 2017, order [Doc. 24] granting summary judgment to defendant The Lilly Company on all of the claims in plaintiff's amended complaint [Doc. 8]. Defendant responded in opposition [Doc. 30]. Plaintiff's motion is therefore fully briefed and ready for disposition. E.D. Tenn. L.R. 7.2. After carefully considering the matter, the Court will deny plaintiff's motion.

## I.     Background

This case concerns allegations of disability and age discrimination in violation of: the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* The Court previously outlined the undisputed facts underlying this action in the memorandum opinion [Doc. 23]

accompanying its order granting summary judgment [Doc. 24]. As such, the Court here provides only a limited summary of the factual and procedural history of this case.

## A. Factual History

Plaintiff worked as a forklift service technician for defendant from August 1978 until his termination in late 2014 [Doc. 21-1 p. 16].[1] This position required plaintiff to lift sixty- to seventy-pound tanks on a daily basis, to occasionally lean over and place twenty- to thirty-pound parts in engine spaces, and to generally bend, reach, and crawl under the forklifts [Doc. 19-1 pp. 15–16, 19–20]. Plaintiff began experiencing back pain in 2011 [*id.* at 38], and on June 24, 2014, he underwent a discectomy to remove a herniated disk [Doc. 19-34 p. 15]. Plaintiff's doctor, Patrick Bolt, indicated that five to six months of recovery would be necessary for significant improvement, though he also noted that this timetable was an "extremely variable" estimate [*Id.* at 12–14]. Plaintiff then requested, and defendant approved, leave until September 30, 2014 [Doc. 19 p. 3; Doc. 19-2].

After plaintiff returned to his doctor with increased pain, he underwent a second surgery that restarted the clock on his estimated recovery time [Doc. 19-34 pp. 18–21]. Then, on October 8—approximately one week after plaintiff's approved leave ended, but without having resumed work—plaintiff returned to Dr. Bolt's office and met with nurse practitioner Ashley Self [Doc. 19-35 p. 13]. After a follow-up call that same day, Nurse Self provided plaintiff with a note indicating that he needed additional time off work

---

[1] The Court draws this summary from the facts that were undisputed in the parties' summary judgment briefs and supporting filings [Docs. 19, 21]. *See* Fed. R. Civ. P. 56(e).

and stating, "Off work until [follow-up] apt on 11/19/14 & will be determined at that time" [*Id.*; Doc. 19-2]. Plaintiff provided this note to his supervisor, Chris Oxendine, but defendant terminated his employment the next day, October 9 [Doc. 21-1 p. 28].

Plaintiff met with Nurse Self again on November 19, and she released him to return to work [Doc. 19-17 p. 1]. But when plaintiff spoke with Oxendine that same day, Oxendine informed him that his position was no longer available [Doc. 21-1 p. 3]. Plaintiff reported continued pain to Nurse Self the next day, and after another MRI on November 26, Nurse Self recommended that plaintiff alternate sitting and standing and refrain from lifting over twenty pounds until she could reevaluate his condition [Doc. 19-35 pp. 20–21]. Finally, in December 2014, plaintiff spoke with defendant's operations manager, Wally Painter, about returning to his position [Doc. 21-1 p. 22]. Painter told plaintiff, "[W]ith your age, you just need to go ahead and try to get your disability" [*Id.*].

### B.    Procedural History

Plaintiff brought this action on October 8, 2015, seeking monetary relief for defendant's alleged age and disability discrimination in violation of state and federal law [Doc. 1]. Plaintiff later filed an amended complaint under Federal Rule of Civil Procedure 15(a)(1)(B) [Doc. 8]. On May 15, 2017, defendant filed a motion for summary judgment on all of plaintiff's claims [Doc. 18]. Plaintiff responded in opposition [Doc. 21], to which defendant replied [Doc. 22]. Then, on July 26, 2017, the Court entered an order granting defendant summary judgment on all claims in the amended complaint [Doc. 24].

First, the Court held that plaintiff could not sustain his ADA disability discrimination claim—whether premised on his termination or defendant's failure to engage in the interactive process—because plaintiff could not show that he was "otherwise qualified" to perform the essential functions of his position, "with or without reasonable accommodation." *Maat v. County of Ottawa*, 657 F. App'x 404, 411 (6th Cir. 2016) (quoting 42 U.S.C. § 12111(8)). Second, plaintiff's TDA disability discrimination claim failed because the TDA does not require employers to provide reasonable accommodation and because plaintiff was indisputably not qualified to perform the duties of his position. *See Jones v. Sharp Elecs. Corp.*, No. W2013–01817–COA–R3–CV, 2014 WL 806131, at *3 (Tenn. Ct. App. Feb. 28, 2014). Third, summary judgment was proper with respect to plaintiff's age discrimination claims because he could not establish that he was "qualified" for his position under the ADEA and THRA, for the same reasons warranting dismissal of his ADA and TDA claims. *See Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547 (6th Cir. 2004).

On August 23, 2017, plaintiff moved the Court, pursuant to Federal Rule of Civil Procedure 59(e), to reconsider its order granting defendant summary judgment [Doc. 28]. Specifically, plaintiff requests that the Court reconsider the following four questions:

[1] Whether Plaintiff was a "qualified individual" for purposes of his disability discrimination claim, his interactive process claim, and his age discrimination claim; [2] Whether Plaintiff proposed a "reasonable accommodation" in light of the undisputed testimony that his termination was temporary and that he would be returned to work when he was released to full-duty by his doctor; [3] Whether Defendant failed to engage in the interactive process in light of . . . the undisputed testimony that his termination was "temporary" and that he would be returned to work when he

4

was released to full-duty by his doctor; and [4] Whether Defendant violated the ADA [by] requiring Plaintiff to be "100% healed" before considering returning him to work.

[Doc. 28 pp. 2–3 (citation omitted)]. Defendant responded in opposition, asserting that: (1) plaintiff waived any argument regarding a "100% healed" rule by failing to raise it in response to defendant's summary judgment motion; (2) plaintiff's other arguments are mere reassertions of the same positions it took in its summary judgment briefs, and thus are not a proper basis for Rule 59(e) relief; and (3) even if these arguments were properly raised, the Court correctly decided the merits of defendant's summary judgment motion [Doc. 30]. Plaintiff did not file a reply to defendant's response brief, and the time in which to do so has now passed. *See* E.D. Tenn. L.R. 7.1(a).

## II. Standard of Review

Federal Rule of Civil Procedure 59(e) permits courts to entertain a motion to alter or amend a final judgment. The Sixth Circuit has held, however, that "[t]he circumstances under which a district court may grant a Rule 59(e) motion are limited." *Robbins v. Saturn Corp.*, 532 F. App'x 623, 632 (6th Cir. 2013). Relief under this rule is proper only if the movant shows one of the following: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)); *accord Ogden v. Fortress Grp. USA*, 550 F. App'x 283, 284 (6th Cir. 2014); *Alliance Tax Credit Fund 31-A, Ltd. v. Murphy*, 494 F. App'x 461, 568 (6th Cir. 2012).

A Rule 59(e) motion "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Such motions "should not be utilized to submit evidence which could have been previously submitted in the exercise of reasonable diligence[,] and are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." *Kenneth Henes Special Projects Procurement v. Cont'l Biomass Indus.*, 86 F. Supp. 2d 721, 726 (E.D. Mich. 2000) (quoting *Nagle Indus. v. Ford Motor Co.*, 175 F.R.D. 251, 254 (E.D. Mich. 1997)). Moreover, "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g*, 477 F.3d 383, 395 (6th Cir. 2007). Indeed, the Sixth Circuit has "found issues to be waived when they are raised for the first time in motions requesting reconsideration." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *see also Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984) (finding an issue raised for the first time in a motion for reconsideration "effectively waived").

## III. Analysis

The Court will first discuss plaintiff's argument that the Court failed to consider all pertinent evidence in determining that he was not a "qualified individual" for purposes of the ADA, TDA, ADEA, and THRA [Doc. 29 pp. 2–8].[2] The Court will next address

---

[2] The first two questions plaintiff requests the Court to reconsider—whether plaintiff was a "qualified individual" and whether he proposed a "reasonable accommodation"—are really one and the same in this case [Doc. 28 p. 2]. Thus, the Court will address these issues together in Section III.A below, just as plaintiff does in his memorandum in support [Doc. 29 pp. 2–8].

plaintiff's argument that he established a prima facie case of defendant's failure to engage in the ADA interactive process [*Id.* at 9–12]. Finally, the Court will consider plaintiff's argument that defendant's alleged "100% healed" rule violates the ADA [*Id.* at 8–9]. For the reasons explained below, the Court finds each of these arguments unpersuasive and thus will not reverse its decision to grant summary judgment in defendant's favor.

### A.    Plaintiff's Status as a Qualified Individual

First, plaintiff argues that the Court overlooked relevant evidence in holding that plaintiff's request for additional medical leave was objectively unreasonable, and thus that plaintiff was not a qualified individual under the ADA.

The ADA prohibits discrimination against a "qualified individual" on the basis of disability with regard to, among other things, "the hiring, advancement, or discharge of employees." *See* 42 U.S.C. § 12112(a). The statute defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." § 12112(b)(5)(A). And an individual is "otherwise qualified" under the ADA if the employee, "with or without reasonable accommodation, can perform the essential functions of the employment position." § 12111(8). Moreover, although courts apply the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) when the plaintiff seeks to prove disability discrimination indirectly, that framework is unnecessary where a plaintiff asserts direct evidence of such discrimination.

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Instead, such a plaintiff "may defeat her employer's summary-judgment motion by producing evidence that she is disabled and 'otherwise qualified' for the relevant position—in other words, that she could perform her job with a reasonable accommodation." *Maat*, 657 F. App'x at 412.

In its July 26 opinion, the Court found that plaintiff was bringing a direct-evidence claim and that neither party disputed that plaintiff was disabled for purposes of the ADA. Moreover, the Court found that plaintiff did not appear to dispute that, in October and November 2014, he was physically incapable of performing the essential functions of his position as a forklift service technician, given the pain he was experiencing and the limits on his physical activity while recovering from surgery. Thus, plaintiff could be "otherwise qualified" under the ADA only if he proposed a reasonable accommodation that would permit him to perform his essential duties. *See Meade v. AT&T Corp.*, 657 F. App'x 391, 396 (6th Cir. 2016) (noting that "the plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability . . . with [or without] a proposed reasonable accommodation" (quoting *Kleiber*, 485 F.3d at 869)).

The Court held that plaintiff's proposed accommodation—additional leave time, as reflected in Nurse Self's note—was unreasonable under Sixth Circuit precedent. The Court noted that, although additional leave may constitute a reasonable accommodation in some cases, "an extension to that leave can be a reasonable accommodation only when its duration is definite." *Maat*, 657 F. App'x at 412; *see also Aston v. Tapco Int'l Corp.*, 631 F. App'x 292, 297–98 (6th Cir. 2015) ("[W]hen an employee's return date is not so certain,

an employer is not required to keep open a job for an employee indefinitely."); *Walsh v. UPS*, 201 F.3d 718, 727 (6th Cir. 2000) (holding that when "an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation"). Here, while Nurse Self's note indicated that plaintiff was due for a follow-up appointment on November 19, the note did not indicate whether plaintiff would be released to return to work on that date. Plaintiff provided no documentation to defendant suggesting a "certain or credibly proven end" to his requested leave, *Aston*, 631 F. App'x at 298, and Dr. Bolt's description of his estimated recovery time as "extremely variable" further negated any such certainty [Doc. 19-34 pp. 12–14]. Indeed, plaintiff's continued pain, the MRI on November 26, and Nurse Self's recommendation that plaintiff still refrain from strenuous activity seemed to bear out the uncertainty as to when plaintiff would fully recover.

Thus, the only accommodation plaintiff proposed was unreasonable as a matter of law, meaning plaintiff was not "otherwise qualified" under the ADA. *See* § 12111(8). This finding was also fatal to plaintiff's TDA claim, as that statute—though otherwise closely similar to the ADA—does not include a reasonable accommodation component. *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841–42 (Tenn. Ct. App. 2009). Rather, if a "disability to some degree prevents [the employee] from performing the duties required . . . or impairs the performance of the work involved," there is no TDA violation. Tenn. Code Ann. § 8-50-103(b). Here, because plaintiff was physically incapable of performing his job duties in October and November 2014, he did not qualify for TDA protection. And

finally, plaintiff's age discrimination claims under the ADEA and THRA failed on the same basis. Under the *McDonnell Douglas* framework for those claims—which carry the same analysis, *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006)—plaintiff was required to prove, among other elements, that he was "qualified" for the position he held, *Rowan*, 360 F.3d at 547. Because plaintiff was, once more, physically incapable of performing the tasks necessary to serve as a forklift service technician, he could not establish a prima facie case of age discrimination under either statute.

In his motion for reconsideration, plaintiff argues that the above conclusions were clearly erroneous because the Court failed to consider two key pieces of evidence. First, plaintiff asserts that his termination was merely "temporary" and that he was to be allowed to return to work once he presented a full doctor's release [Doc. 29 p. 3]. Plaintiff points to the deposition testimony of operations manager Painter that plaintiff's "termination was on a temporary basis" and that defendant would "look at hiring [him] back" if he re-applied following a full recovery [Doc. 19-29 p. 46:10–21]. Plaintiff asserts that a request for additional leave "cannot be viewed as unreasonable when the employer has voluntarily opted to make the termination temporary and promised to return the employee to work upon recovery" [Doc. 29 p. 4]. Plaintiff also distinguishes *Maat* and *Aston* on the ground that in neither case did the employer label the termination "temporary."

Second, plaintiff argues that the Court failed to adequately consider defendant's conduct after plaintiff's termination on October 9. Plaintiff asserts that defendant's allegedly unlawful actions continued until at least November 19, when plaintiff presented

a medical release to return to work but was denied that opportunity. Plaintiff cites to two cases in support. First, in *Cehrs v. Northeast Ohio Alzheimer's Research Center*, an employer terminated an employee on the asserted basis that, although she had properly requested initial medical leave, she had later failed to complete paperwork requesting an extension. 155 F.3d 775, 778 (6th Cir. 1998). The employee had applied to be rehired six weeks after her initially expected return date, once her doctor had cleared her for full-time work. *Id.* The court held that a genuine factual dispute existed as to whether the employer's reason for termination was pretextual, in part because the employer "still had the opportunity to reconsider its adverse employment action when [plaintiff] . . . reapplied for a position shortly after she was terminated." *Id.* at 784.

Plaintiff next cites to *Owens v. Quality Hyundai*, where after nearly a year of leave without a definite end, an employee presented a doctor's note stating that he was able to return to work. No. 05-C-4325, 2007 WL 495248, at *1 (N.D. Ill. Feb. 15, 2007). The parties disputed whether the employee had indicated earlier in the year that he expected his leave to be permanent. *See id.* Because an employee's status as a "qualified individual" must be judged as of the time of the adverse employment decision, *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998), if the employee was actually terminated after he presented his doctor's note and sought to return to work, then he would have been capable of performing the essential functions of his job at the critical moment, *Owens*, 2007 WL 495248, at *3. Thus, a genuine dispute of material fact existed as to whether the employee was a qualified individual for purposes of the ADA. *Id.*

Defendant responds that the Court properly rejected plaintiff's argument that his request for additional leave was reasonable in its July 26 opinion [Doc. 30 pp. 3–6]. First, defendant argues that the parties extensively briefed and the Court rigorously analyzed this precise issue at the summary judgment stage, and thus plaintiff's argument is not a ground for Rule 59(e) relief. Next, defendant asserts that, because it is undisputed that plaintiff was physically incapable of performing his job duties on either October 9 or November 19, considering defendant's post-termination conduct makes no difference in the "otherwise qualified" analysis. Defendant also notes that plaintiff does not specify what conduct by defendant after October 9 violated the ADA. Defendant further argues that, even if plaintiff's termination was "temporary," he was still incapable of performing his job duties on November 19 and never contacted defendant about returning to work after receiving a full medical release the following February [*See* Doc. 19-1 pp. 109–10]. Thus, defendant asserts that a request for any additional leave was unreasonable as a matter of law.

Having carefully considered the arguments advanced and authorities cited by both parties, the Court finds that plaintiff has identified no "clear error of law" or "need to prevent manifest injustice" with regard to the Court's holding that he was not a qualified individual. *Henderson*, 469 F.3d at 496.[3] First, as to plaintiff's argument that the Court failed to consider the temporary nature of his termination, the Court agrees with plaintiff that "[t]he reasonableness of an employer's attempt at accommodation . . . . must be

---

[3] There is likewise no suggestion of the other two options for Rule 59(e) relief, i.e., newly discovered evidence or an intervening change in the law. *Henderson*, 469 F.3d at 496.

determined on a case-by-case basis" and that "what may be a reasonable accommodation for one employee may not be reasonable for another." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). But even viewing all facts in the light most favorable to plaintiff, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), there is still no dispute that plaintiff was physically incapable of performing the essential functions of a forklift service technician on October 9—the date of his termination [*See* Doc. 19-12; Doc. 21-1 p. 29]. Plaintiff does not suggest otherwise in his motion for reconsideration or memorandum in support [*See* Docs. 28–29]. Indeed, the uncontroverted evidence is that, as late as November 26, plaintiff was advised to refrain from the very activities necessary to perform his job duties [Doc. 19-35 pp. 20–21]. Given that plaintiff had already been on leave since mid-June [Doc. 19-1 p. 63], a request for further leave beyond October 8 was, absent any definite endpoint, objectively unreasonable under Sixth Circuit precedent, *see Walsh*, 201 F.3d at 727.

The fact that some of defendant's employees considered plaintiff's termination "temporary" does not change this conclusion. The only evidence plaintiff cites on this point is Painter's deposition [*See* Doc. 29 pp. 1–3 (citing Doc. 19–29 pp. 46, 67, 127)]. But Painter's testimony does not support a finding that plaintiff's termination was "temporary" in the sense that defendant contemplated a brief leave of absence followed by a guaranteed resumption of work. Rather, Painter testified as follows:

> Q.   When you spoke with [plaintiff] in October, that telephone conversation you were talking about, did you ever explain to him that his termination was on a temporary basis, and when he recovered, he would be allowed to come back to work?

13

A.   I did tell him, because Eric [Wisher] did say and I was telling him what Eric had said, was once all of this is done and *if you can come back and you want to apply for the job, apply for the job, and if you can pass the physicals and all of that stuff, then yes, we will look at hiring you back*. Yes, that was told to [plaintiff].

[Doc. 19-29 p. 46:10–21 (emphasis added)].

Thus, Painter merely indicated to plaintiff on October 9 that he could reapply for his position in the future and that, if he could "pass the physicals and all of that stuff," then defendant would "look at hiring [him] back" [*Id.*].[4]   Neither party disputes Painter's characterization of these circumstances.   The Court is not convinced that this evidence "casts a different light on whether [plaintiff's] request for additional leave on October 9" was reasonable, as plaintiff asserts [Doc. 29 p. 1].   Instead, judging the matter as of October 9, defendant had "already provided a substantial leave" to plaintiff, and thus a request for "an additional leave period of a significant duration, with no clear prospects for recovery, [was] . . . objectively unreasonable." *Walsh*, 201 F.3d at 727.   While Painter's remarks to plaintiff regarding the possibility of him being rehired "may have gotten [his] hopes up that he could return[,] '[e]mployers should not be discouraged from doing more than the ADA requires even if the extra effort that perhaps raises an applicant's expectations does not

---

[4] Painter's testimony that plaintiff would have retained his accrued time-off and benefits had he been rehired is likewise not dispositive [Doc. 19-29 p. 127:1–16].  As with plaintiff being rehired at all, this eventuality was entirely dependent on plaintiff satisfying the usual requirements for a new hire, i.e., "fill[ing] out the application, [and doing] the physicals and drug tests and background checks and all of that stuff" [*Id.* pp. 127:18–128:8].   Thus, while defendant contemplated the *possibility* that it might rehire plaintiff in the future—contingent on, among other things, him being physically capable of performing the essential functions of his position—such an expectation does not show that plaintiff's termination was "temporary" in the sense he means.

work out.'"  *Owens*, 2007 WL 495248, at \*5 (quoting *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1023 (7th Cir. 1997)).

Largely for the same reasons, the Court also finds plaintiff's attempt to distinguish *Maat* and *Aston* unpersuasive.  Plaintiff concedes that the rule in these cases—i.e., "when an employee's return date is not so certain, an employer is not required to keep open a job for [her] indefinitely," *Aston*, 631 F. App'x at 297–28—should control in most cases.  And plaintiff's only basis for distinguishing these decisions is that in neither of them was the employee's termination "temporary."  But, as explained above, the record is undisputed that plaintiff's employment was not "temporary" in the sense that his job would remain open for him until he fully recovered.  The Court thus finds that Painter's remarks to plaintiff concerning the possibility of him being rehired in the future are insufficient to distinguish this case from *Maat* and *Aston*.  In both those cases and this, the employer permitted a substantial period of leave before denying a request for additional leave that lacked a clear indication of when the employee would be able to return to work.  *Maat*, 657 F. App'x at 407–09; *Aston*, 631 F. App'x at 294–95.  The Sixth Circuit held that such denial was reasonable as a matter of law under these circumstances.  *Maat*, 657 F. App'x at 414; *Aston*, 631 F. App'x at 298.  This same logic controls the Court's decision here.

Second, as to plaintiff's argument that the Court failed to consider defendant's post-termination conduct, the Court agrees with plaintiff that, in certain instances, an employer's conduct after an initial termination decision may be relevant to a disability discrimination claim.  *See, e.g.*, *Cehrs*, 155 F.3d at 784.  But in any such case, "[w]hether an individual

meets the definition of a qualified individual with a disability is to be determined at the time the employment decision was made." *Cummings v. Dean Transp., Inc.*, 9 F. Supp. 3d 795, 801–02 (E.D. Mich. 2014). And here, there is no dispute that defendant terminated plaintiff's employment on October 9 and that plaintiff was physically incapable of performing the essential functions of his position on that date.[5] Moreover, as discussed above, plaintiff proposed no reasonable accommodation so as to render this termination impermissible under the ADA and TDA. Thus, the only question remaining is whether defendant violated the ADA by failing to rehire plaintiff at a later date. Such a theory may establish an ADA violation under some circumstances, since the ADA's protection extends to hiring decisions. *See EEOC v. UPS, Inc.*, 249 F.3d 557, 563 (6th Cir. 2001).

Although plaintiff did present a note from Nurse Self on November 19 that released him to return to work [Doc. 19-17 p. 1], plaintiff called Nurse Self the very next day complaining of increased back and leg pain and requesting another MRI [Doc. 19-35 pp. 19–20]. Moreover, plaintiff also called his long-term disability-benefits provider, CIGNA, that same day and reported that (1) his foot was still numb, (2) he was still experiencing back pain, and (3) his doctor was "still treating and keeping [him] off work" [Doc. 19-19].

---

[5] For purposes of the ADA, an employer's termination of an employee is effective when the employer provides "unequivocal notice of termination" to the employee. *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002) (quoting *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir. 1986)). Here, plaintiff has repeatedly acknowledged that he received notice of his termination as of October 9 or 10 [*See* Doc. 19-1 pp. 112, 119–20; Doc. 19-13; Doc. 19-14; Doc. 19-15]. Thus, notwithstanding the parties' dispute over whether this termination was "temporary," the Court finds that there is no genuine factual dispute that plaintiff was terminated for purposes of the ADA on October 9. *See Dvorak*, 289 F.3d at 486.

When asked at his deposition whether this information was correct, plaintiff responded, "I guess, yeah" [Doc. 19-1 p. 100:5–24]. Indeed, Nurse Self testified that, given the results of the November 26 MRI, she would have imposed restrictions on plaintiff's physical activities inconsistent with his job duties [Doc. 19-35 pp. 20–21]. In its summary judgment briefs, defendant argued that this evidence conclusively established that plaintiff was not qualified for the position of forklift service technician in late November [Doc. 19 pp. 19–21; Doc. 22 pp. 6–9]. The only evidence plaintiff supplied in response was a single sentence in his own affidavit, explaining that he was "simply relaying his former employer's statements to his medical professionals and the benefit provider" [Doc. 21 p. 14 (citing Doc. 21-1 ¶ 5)]. Defendant replied that this attempt to re-characterize plaintiff's own words to Nurse Self and CIGNA was a "sham"—a "misrepresent[ation]" without any evidentiary support whatsoever [Doc. 22 pp. 8–9].

The Court analyzed this precise issue in its July 26 opinion and concluded that plaintiff had failed to carry his burden as the nonmoving party under Rule 56 [Doc. 23 pp. 13–14 n.5]. The Court found that, even setting aside the parties' dispute over what plaintiff said to CIGNA, Nurse Self, and Dr. Bolt, plaintiff had failed to respond at all concerning the results of the November 26 MRI or Nurse Self's corresponding recommendations. *See* Fed. R. Civ. P. 56(e) (providing that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed [and] . . . grant summary judgment" on that basis). Plaintiff has not raised any new arguments or cited to any additional evidence to show that this conclusion was in error.

Indeed, other than reiterating that plaintiff presented Nurse Self's note on November 19, plaintiff's memorandum in support of his motion for reconsideration still fails to address the substance of whether plaintiff was "otherwise qualified" for his position on that date. Plaintiff never affirmatively argues—much less substantiates—that he was capable of performing the essential functions of his job on November 19, and he never attempts to refute or explain the November 26 MRI results.

Nor has plaintiff sufficiently reconciled the statements he made to CIGNA and others on November 20, concerning his continued pain and doctor-ordered leave, with his inconsistent position here. *See Stallings v. Detroit Pub. Sch.*, 658 F. App'x 221, 227 (6th Cir. 2016) (noting the unexplained incongruity between the plaintiff's claim that she was qualified for work on September 10 and her application for disability benefits on September 18). It is true that "[n]either application for nor receipt of . . . disability benefits is by itself conclusive evidence that an individual is completely incapable of working." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 429 (6th Cir. 2014). Yet "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier . . . total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). Here, plaintiff's motion for reconsideration fails entirely to address this issue, and the two explanations offered in plaintiff's summary judgment brief are inadequate [*See* Doc. 21 pp. 13–14]. As for plaintiff's claim that these statements admitted incapacity only to the extent he was denied an accommodation, plaintiff cited to no Rule 56(c) materials in support of such an

interpretation, and in any event the Court has already concluded that additional leave was unreasonable. As for plaintiff's claim that he was simply relaying *defendant's* view of his unsuitability to return to work, the Court agrees with defendant that such an interpretation is facially implausible in light of the actual words plaintiff used [*See* Doc. 19-19].

Moreover, the two cases plaintiff cites in support of this theory—*Cehrs* and *Owens*—are distinguishable. First, the court in *Maat* itself distinguished *Cehrs*, noting that the *Cehrs* plaintiff had requested leave "that had a definite end" and had "produced evidence that her employer had given non-disabled employees comparable periods of leave." 657 F. App'x at 413 (citing *Cehrs*, 155 F.3d at 778, 783). Neither factor was present in *Maat*, and neither is present here. Further, the *Cehrs* plaintiff reapplied for employment within the timeframe suggested by her supervisor and promptly presented a medical release for full-time work. 155 F.3d at 778. But here, plaintiff did not fully recover until February of the following year and never reapplied for employment after that time.

Second, while in *Owens* a genuine dispute did exist as to when the employee was terminated—and thus whether he was qualified at that time—what plaintiff fails to note is that the court went on to hold that the employer's refusal to keep the employee's job open during a lengthy period of medical leave without a definite endpoint was objectively reasonable. *Id.* at *4–5. The court granted summary judgment for the employer partly on that basis. *Id.* at *6. In other words, while the *Owens* court parceled out the "otherwise qualified" and "reasonable accommodation" inquiries into distinct bundles, the ultimate

result was substantively the same as in *Maat* and *Aston*.  And, as noted above, the court expressly rejected the same argument plaintiff makes here regarding an employer's assurances that the employee could return to work after a full recovery.  *Id.* at *5. Therefore, *Owens* actually supports the Court's conclusion that defendant is entitled to summary judgment on plaintiff's discrimination claims.

In sum, neither set of evidence to which plaintiff now points—i.e., the temporary nature of his termination or defendant's post-October 9 conduct—affects the conclusion the Court reached in its July 26 opinion.  Thus, the Court finds no "clear error of law" or "need to prevent manifest injustice" that would warrant reversal of its finding that plaintiff is not a qualified individual for purposes of the ADA, TDA, ADEA, or THRA.  *Henderson*, 469 F.3d at 496.  This evidence was also not "newly discovered" in the time since the Court issued that ruling.  *Id.*  All of these facts were previously available to plaintiff, and, indeed, he relied upon them in opposing summary judgment [*See* Doc. 21 pp. 15–16].  The Court simply rejected plaintiff's argument that this evidence created a genuine dispute of material fact in its July 26 opinion.  But Rule 59(e) is "not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." *Kenneth Henes*, 86 F. Supp. 2d at 721; *accord Sault Ste. Marie Tribe*, 146 F.3d at 374 (noting that Rule 59(e) does not exist to provide "an opportunity to re-argue a case").  Thus, plaintiff's arguments on this point fail to provide any proper basis for reversal of the Court's grant of summary judgment in defendant's favor.

### B.     Defendant's Failure to Engage in the Interactive Process

Second, plaintiff argues that the Court erred in holding that he did not establish a prima facie case of defendant's failure to engage in the ADA interactive process [Doc. 29 pp. 9–12]. For the reasons explained below, however, this argument fails.

Under the ADA, when an employee proposes a reasonable accommodation, "the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84–85 (6th Cir. 2012) (quoting *Kleiber*, 485 F.3d at 871); *accord Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000) ("The ADA mandates an individualized inquiry in determining whether an employee's disability or other condition disqualifies him from a particular position."). Failure to engage in the interactive process can constitute an independent violation of the ADA. *Rorrer v. City of Stow*, 743 F.3d 1025, 1040–41 (6th Cir. 2014). However, "[a]lthough mandatory, failure to engage in the interactive process is only an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation." *Id.* at 1041 (citing *Keith v. County of Oakland*, 703 F.3d 918, 929 (6th Cir. 2013)). Plaintiff's amended complaint alleges an interactive process theory [Doc. 8 ¶ 27]. However, in its July 26 opinion, the Court found that because it had already held that plaintiff never proposed any reasonable accommodation, this theory likewise

failed [Doc. 23 p. 15 (citing *Peoples v. FCA US, LLC*, No. 15-14003, 2017 WL 2264786, at *12 (E.D. Mich. May 24, 2017))].

Plaintiff argues that this holding amounts to clear error. First, plaintiff attempts to distinguish *Rorrer* and *Peoples* on their facts. As for the former, plaintiff notes that the court in *Rorrer* reversed summary judgment for the employer because it found that the employee's proposed accommodations were, in fact, reasonable. 743 F.3d at 1043–46. As for the latter, plaintiff notes that the employee's interactive process claim in *Peoples* failed for three different reasons: (1) he never stated such a claim in his complaint; (2) he never proposed a reasonable accommodation; and (3) he himself caused the breakdown in the interactive process. 2017 WL 2264786, at *13. Here, by contrast, plaintiff asserts that he did propose a reasonable accommodation but that defendant never considered his request for additional leave. Plaintiff also cites to *Buchanan v. City of Mt. Juliet*, where the Middle District of Tennessee denied summary judgment on an ADA claim because a genuine dispute existed as to whether the employer engaged in the interactive process in good faith. No. 3:11–cv–00265, 2013 WL 623652, at *7 (M.D. Tenn. Feb. 20, 2013). The court noted that, while the employee had failed to propose any accommodations at all, such a failure "did not obviate the [employer's] requirement to engage in the interactive process." *Id.* Finally, plaintiff cites to the ADA regulations' warning that "[t]o determine the appropriate reasonable accommodation[,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3).

The Court finds that plaintiff has failed to identify a proper basis for reversal regarding his interactive process theory. At the outset, the Court notes that plaintiff does not dispute that an interactive process claim cannot stand without a proposed reasonable accommodation. *Rorrer*, 743 F.3d at 1041. As discussed above, plaintiff has never identified any accommodation to which defendant could have assented as of October 9 or November 19 that would have been objectively reasonable under Sixth Circuit precedent. *See supra* Section III.A. Further, the Court finds plaintiff's attempts to distinguish *Rorrer* and *Peoples* unpersuasive. While it is true that the court in *Rorrer* reversed the dismissal of the employee's interactive process claim, it did so because the plaintiff had proposed two accommodations the court found reasonable: (1) continuing work with the exception of one particular task;[6] or (2) transfer to a different position. 743 F.3d at 1043–44. This holding, of course, does not speak to whether a request for indefinite medical leave after an already lengthy absence would be reasonable; *Rorrer* never considered that question.[7] Thus, this distinction does not undermine *Rorrer*'s clear statement that an interactive process claim cannot survive without a reasonable accommodation. And as for *Peoples*, while the employee's failure to propose an accommodation was just one of three reasons

---

[6] Correspondingly, the court held that there was a genuine dispute of material fact as to whether the particular task that the employee was incapable of performing—i.e., driving a fire engine during an emergency—was an essential function of the employee's job. 743 F.3d at 1043. There is no similar dispute here, as discussed above. *See supra* Section III.A.

[7] It is for this reason that the Court's July 26 opinion cites *Rorrer* for its statement of a general principle of law, not as a factually analogous case. Plaintiff's attempt to distinguish *Rorrer* on its facts is therefore particularly inapposite.

for dismissing his interactive process claim, the court made clear that each reason was "independently fatal to the claim." 2017 WL 2264786, at *13.

Moreover, the Court finds that the reasoning of *Buchanan* does not apply here. It is true that, as a general rule, "an employer cannot prevail at the summary judgment stage if there is a genuine dispute as to whether the employer engaged in 'good faith' in the interactive process." *Buchanan*, 2013 WL 623652, at *7 (citing *Lafata v. Church of Christ Home for Aged*, 325 F. App'x 416, 423 (6th Cir. 2009)). But this principle does not preclude summary judgment here. *Buchanan* and the Sixth Circuit decisions on which it relied—principally, *Lafata* and *Keith*—all concerned cases where a genuine dispute existed as to whether the employee *could* have performed the essential functions of the position with the benefit of a reasonable accommodation. *See Keith*, 703 F.3d at 929; *Lafata*, 325 F. App'x at 422; *Buchanan*, 2013 WL 623652, at *6. Indeed, the court in *Lafata* made clear that an employer may be liable for failure to engage in good faith only if "a reasonable accommodation would have been possible." 325 F. App'x at 422 (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 391 (2002)); *see also Keith*, 703 F.3d at 929 (noting that, in an interactive process claim, "[t]he plaintiff must show that a reasonable accommodation was possible" (citing *Breitfelder v. Leis*, 151 F. App'x 379, 386 (6th Cir. 2005))). Furthermore, in *Keith*, the court reversed a grant of summary judgment on an interactive process claim because, just

like in *Rorrer*, it found that the employee *had* proposed a reasonable accommodation, thus triggering the duty to engage in the interactive process. 703 F.3d at 929.[8]

But here, given the lack of a genuine dispute as to plaintiff's ability to perform the essential functions of his job and the Court's finding that a request for additional leave was unreasonable, no possibility of a reasonable accommodation is apparent, even with the benefit of hindsight. Indeed, plaintiff has never suggested any other accommodation at which the parties might have arrived by engaging in the interactive process.[9] Plaintiff thus cannot carry his burden of "show[ing] that a reasonable accommodation was possible," *Keith*, 703 F.3d at 929, and so the route to employer liability recognized in *Lafata* and

---

[8] The court in *Buchanan* stated that *Keith* reversed "based on the district court's 'incorrect premise' that, because the plaintiff 'failed . . . as a matter of law, to propose an accommodation that was objectively reasonable, any failure by [the defendant] to engage in the interactive process did not constitute a violation of the ADA.'" 2013 WL 623652, at *7 (quoting *Keith*, 703 F.3d at 929). *Buchanan* offered this reading of *Keith* as support for the proposition that, regardless of whether a reasonable accommodation was proposed, a failure to engage in good faith may constitute an independent ADA violation. But this is a faulty reading of *Keith*. The "incorrect premise" to which the Sixth Circuit referred was the district court's finding that the employee's proposed accommodation was unreasonable. *See* 703 F.3d at 929. The court in *Keith* never discussed the question of the employer's good or bad faith, much less rested its holding on that ground. Instead, the court reversed to permit the district court to decide in the first instance whether the employer failed to engage in good faith in light of the fact that the employee *had* suggested a reasonable accommodation. *Id.* Thus, *Keith* actually supports the conclusion the Court reached in its July 26 order, for much the same reason as *Rorrer* does.

[9] The Court also notes that defendant claims to have repeatedly offered plaintiff the option of transferring to the service manager position, thus swapping roles with Oxendine [Doc. 19-27 pp. 64–66]. Plaintiff contends that these were not truly serious offers [Doc. 21-1 ¶ 5]. While a transfer to a different position may constitute a reasonable accommodation in some cases, *see, e.g.*, *Rorrer*, 743 F.3d at 1043–44, "to overcome summary judgment, the plaintiff generally must identify the specific job he seeks and demonstrate that he is qualified for that position," *Kleiber*, 485 F.3d at 870. Outside of dismissing the seriousness of the offers defendant alleges to have made, plaintiff has not suggested that he was qualified for—and willing to take—any other position with defendant. Thus, such a theory cannot serve as the basis for a reasonable accommodation.

*Buchanan* does not apply. Therefore, the Court committed no "clear error of law" in dismissing plaintiff's interactive process theory. *Henderson*, 469 F.3d at 496.[10]

In sum, plaintiff has failed to identify any proper basis for the Court to reverse its grant of summary judgment to defendant on plaintiff's interactive process theory.

## C.     Defendant's "100% Healed" Rule

Finally, plaintiff argues that defendant's alleged "100% healed" rule is a per se violation of the ADA [Doc. 29 pp. 8–9]. For the reasons explained below, the Court finds that this argument does not supply a basis for reversal under Rule 59(e).

In support of this argument, plaintiff points to supervisor Oxendine's deposition testimony that plaintiff "had been told all along that he[ had] to have a 100% release from the doctor to come back" to work [Doc. 21-1 p. 30]. Plaintiff asserts that such a "'100% healed' rule . . . is a clear violation of the ADA" [Doc. 29 p. 8 (citing *Henderson v. Ardco, Inc.*, 247 F.3d 645 (6th Cir. 2001))]. To establish this proposition, plaintiff cites to a recent decision by the Middle District of Tennessee, *Harris v. City of Lewisburg*, 1:15-cv-00114, 2017 WL 3237780 (M.D. Tenn. July 31, 2017). In *Harris*, the court denied summary judgment on an ADA failure-to-accommodate claim where a supervisor rejected an employee's repeated requests to return from medical leave based on the employer's written policy that injured employees must "have a 100 percent release from their doctor without restrictions before they come back to work." *Id.* at *2, *10. In so holding, the court noted

---

[10] Therefore, the Court need not resolve the question, disputed by the parties, whether defendant actually did fail to engage in the interactive process in good faith.

that "[m]ultiple courts have held that a '100% healed' rule is a 'per se' violation of the ADA."  *Id.* at *9 (citing, *inter alia*, *Arco, Inc.*, 247 F.3d at 653).  Plaintiff argues that defendant here likewise relied on a "100% healed" rule rather than engaging in an interactive process with plaintiff to accommodate his disability.

Defendant responds that plaintiff waived this argument by failing to raise it in response to defendant's summary judgment motion [Doc. 30 pp. 8–10 (citing *Scottsdale Ins. Co.*, 513 F.3d at 553; *Teal v. Coffee Cty. Bank*, Nos. 4:13-cv-19, 4:13-cv-51, 2013 WL 12043473, at *4 (E.D. Tenn. Oct. 3, 2013) ("Rule 59(e) is not an appropriate vehicle for offering argument that should have been offered previously."))].  Defendant also argues that the *Harris* decision does not represent "an intervening change in controlling law," *Henderson*, 469 F.3d at 496, and is, in any event, distinguishable.  Defendant notes that the employee in *Harris* submitted three separate requests to return from leave, but his employer denied these requests without "talk[ing] to Harris about whether he could perform the essential functions of his job."  2017 WL 3237780, at *2.  Here, however, Oxendine spoke with plaintiff on multiple occasions and determined that he was incapable of performing the essential functions of his job only after observing plaintiff's strained movements and obvious pain.  Defendant asserts that this conclusion, not some "100% healed" rule, was the cause of plaintiff's termination.

After considering the parties' respective positions on this issue, the Court finds that plaintiff's argument regarding the "100% healed" rule is not a proper basis for Rule 59(e) relief.  First, defendant is correct that plaintiff failed to raise this argument in its summary

judgment brief [*See* Doc. 21].[11]  Yet the evidence on which plaintiff relies to raise this argument—i.e., Oxendine's deposition—was certainly available to plaintiff at that time [*See* Docs. 19-27, 21-1].  Thus, this argument is waived.  *See Roger Miller Music, Inc.*, 477 F.3d at 395 ("[P]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.").

But even if this argument were properly raised, the Court would still find it unpersuasive.  The Court has little doubt that, in almost all cases, it would violate the ADA for an employer to categorically refuse to consider a particular employee's actual ability to perform the essential functions of the job and insist upon a full medical release from a physician before permitting the employee to return to work.  This was the situation in *Harris*, and thus the district court's reasoning in that case was sound.  But here, defendant's employees did engage with plaintiff on multiple occasions to determine whether he was physically capable of performing the duties of a forklift service technician, and as the Court has already noted, later events bore out their determination that plaintiff was not qualified for that position [Doc. 19-19; Doc. 19-35 pp. 19–21].  Moreover, there is no evidence in the record that, like *Harris*, defendant had adopted an ironclad "100% healed" rule for employees on medical leave.  Indeed, Oxendine testified that plaintiff *did* present a full release from Nurse Self on November 19, but that Oxendine remained unconvinced that

---

[11] Although plaintiff at one point quotes the portion of Oxendine's deposition testimony that mentions the need for a "100% release" [Doc. 21 p. 17], plaintiff does not use this language to argue that defendant committed a per se violation of the ADA.  Rather, plaintiff uses this language to attempt to refute defendant's claim that he should have contacted Eric Wisher to get his job back.

plaintiff was capable of performing the essential functions of his job, given plaintiff's apparent physical limitations [Doc. 21-1 p. 30]. And, once more, plaintiff's calls to CIGNA and Nurse Self on November 20, along with the November 26 MRI results, reinforce this conclusion. Therefore, the Court finds no evidence to reasonably support a theory that defendant terminated plaintiff based on a lack of compliance with a supposed "100% healed" rule, even if such an argument were not waived.

## IV.    Conclusion

Accordingly, because plaintiff has failed to identify a proper basis under Federal Rule of Civil Procedure 59(e) for the Court to reverse its order granting defendant summary judgment [Doc. 24], plaintiff's Motion to Reconsider [Doc. 28] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE